```
UNITED STATES DISTRICT COURT           FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                        :
BARRY MITCHELL,                         :
                                        :
                    Plaintiff,          :
                                        :       MEMORANDUM
                                        :       AND ORDER
        - against -                     :
                                        :
SERGEANT JOHN KUGLER,                   :       07 CV 1801 (JG) (LB)
SERGEANT NELSON VILLAFANE,              :
POLICE OFFICER JAMES LEE,               :
JOHN DOE #1-5,                          :
DISTRICT ATTORNEY RICHARD A. BROWN,     :
AND THE CITY OF NEW YORK,               :
                                        :
                    Defendants.         :
---------------------------------------------------------------- X
```

A P P E A R A N C E S:

    BARRY MITCHELL
        03A4319
        Five Points Correctional Facility
        PO Box 119
        Romulus, NY 14541
        Plaintiff, *pro se*

    MICHAEL A. CARDOZO
        New York City Law Department
        100 Church Street
        New York, NY 10007
    By:    Maurice L. Hudson
        Attorney for Defendants

JOHN GLEESON, United States District Judge:

    Barry Mitchell brings this *pro se* action under 42 U.S.C. § 1983 against Sergeant John Kugler, Sergeant Nelson Villafane, Police Officer James Lee, John Doe #1-5, District Attorney Richard A. Brown, and the City of New York. Mitchell's complaint alleges violations of numerous provisions of the United States Constitution, including the Fourth, Fifth, Sixth,

Eighth, and Fourteenth Amendments, as well as corresponding supplemental claims under New York law. His complaint seeks damages for false arrest, unlawful search and seizure, excessive force, and malicious prosecution.

On January 23, 2009, I granted defendants' motion for judgment on the pleadings with respect to the unlawful search and seizure, excessive force and supplemental state law claims. However, with respect to Mitchell's claims of false arrest and malicious prosecution, I found it appropriate to convert the motion into a motion for summary judgment and to allow Mitchell an opportunity to file a supplemental opposition brief.

For the reasons stated below, the defendants' converted motion for summary judgment on the false arrest and malicious prosecution claims is granted.

BACKGROUND

I assume familiarity with the facts set forth in my January 23, 2009 opinion, *Mitchell v. Kugler*, No. 07-CV-1801, 2009 WL 160798 (E.D.N.Y. January 23, 2009) ("*Mitchell I*") and recite only the relevant details here.

A.  *The November 8, 2002 Arrest and Charges*

On November 8, 2002, at approximately 1:30 p.m., Mitchell was walking down Elmhurst Avenue in Queens County, New York, when he was approached, surrounded and detained by four Spanish-speaking strangers. One of Mitchell's victims, LD, testified before the grand jury that she had been walking down the street when she identified Mitchell to her friends as the man who had tried to rape her two days earlier. Grand Jury Minutes from Dec. 10, 2002 ("Grand Jury Minutes"), at 11-12. The friends called 9-1-1 and detained Mitchell until the police arrived on the scene, when LD herself told the police that Mitchell had tried to rape her. *Id.* Kugler and John Doe #4, who had arrived at the scene in an unmarked patrol car, handcuffed and

arrested Mitchell. They then put him in the unmarked patrol car and returned to the group that had detained him to speak with them. Approximately ten minutes later, Mitchell was moved to a marked patrol car and then transported to the precinct, where he was searched and locked in a holding cell.

On December 10, 2002, the grand jury indicted Mitchell for two counts of burglary in the first degree,[1] each pertaining to a different victim. The first victim, LD, had reported to the police on November 6, 2002 that at approximately 1:30 PM that day, a man standing behind her in an elevator at 40-050 Denman Street grabbed her neck with his left arm and covered her mouth with his right hand. The perpetrator directed her to get out on the third floor because they were "going to do something." When the elevator opened, LD started to scream and the perpetrator fled via a stairway. During the grand jury proceedings, LD described the perpetrator as having "black dark skin, freckles," and as being "a little chubby." Grand Jury Minutes, at 9. As mentioned above, two days after the incident, LD told the defendants that Mitchell was the one who had tried to rape her.

The second victim, MR, had reported that at approximately 4:15 PM on November 6, 2002, she was subjected to a similar attack to the one LD had been subjected to earlier that day. Specifically, MR said that while she was in an elevator at 99-004 57th Avenue, a man pushed her against the wall, told her that he had a gun, and directed her to get out on the third floor. As with LD, when the elevator door opened and MR started screaming, the perpetrator fled via the stairs.

---

[1] Mitchell's complaint states that he was indicted for burglary in the first degree and burglary in the second degree. It appears from the state court opinion reversing his conviction after the first trial, however, that he was charged with two counts of first degree burglary. *People v. Mitchell*, 789 N.Y.S.2d 185, 186 (2d Dep't 2005).

3

B.  *Mitchell's Trials*

Mitchell's first trial commenced on June 2, 2003. The jury found him guilty of two counts of burglary in the first degree. On August 1, 2003, Mitchell was sentenced to 25 years to life. Mitchell successfully appealed and was ordered a new trial. *People v. Mitchell*, 789 N.Y.S.2d 185 (2d Dep't 2005). In Mitchell's second trial, which began on December 6, 2005, the trial judge did not permit LD to testify.[2] On January 31, 2006, Mitchell was found guilty of burglary in the first degree in connection with the assault of MR, and sentenced as a persistent violent felony offender to 25 years to life in prison. The Appellate Division, Second Department affirmed the conviction on January 29, 2008. *People v. Mitchell*, 849 N.Y.S.2d 445, 445 (2d Dep't 2008). On May 12, 2008, the New York Court of Appeals denied Mitchell leave to appeal. *People v. Mitchell*, 890 N.E.2d 256 (2008).

C.  *The Instant Action*

On April 25, 2007, Mitchell filed his *pro se* complaint, a request to proceed *in forma pauperis* and a motion to appoint counsel. On May 4, 2007, I granted his request for *in forma pauperis* status and denied without prejudice his motion to appoint counsel because Mitchell had not demonstrated "likely merit," as required under *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 174 (2d Cir. 1989). On August 3, 2007, I granted the defendants' motion to stay the action until the resolution of Mitchell's appeal of his conviction. On August 29, 2007, I denied Mitchell's application for reconsideration of my August 3, 2007 stay.

On March 26, 2008, I lifted the stay after being notified by defendants that Mitchell's conviction was affirmed by the New York Appellate Division on January 29, 2008. *People v. Mitchell*, 849 N.Y.S.2d 445 (2d Dep't 2008). Defendants answered Mitchell's

---

[2]  In the minutes from Mitchell's sentencing on January 31, 2006, the judge stated, "The jury in this case only heard one of the two complainants. I would not permit the district attorney to put the other one on because of the legal issues that arose." Notice of Motion, Ex. F at 121.

4

amended complaint on May 16, 2008. On July 17, 2008, I granted defendants' request to stay discovery pending the resolution of the defendants' motion for judgment on the pleadings, which defendants ultimately filed on September 5, 2008. Oral argument, in which Mitchell appeared via video-conference, was held before me on November 6, 2008.

On January 23, 2009, I granted defendants' motion for judgment on the pleadings with respect to all claims except the false arrest and prosecutorial misconduct claims. As to those claims, I found it appropriate to convert the motion into a motion for summary judgment because both parties referenced materials beyond the scope of the pleadings by submitting exhibits and discussing trial testimony.[3] Defendants had already provided Mitchell with a Rule 56.2 statement in connection with their 12(c) motion. Mitchell filed a supplemental opposition to the converted motion on March 9, 2009. Defendants submitted reply papers on March 24, 2009.

DISCUSSION

A. *The Summary Judgment Standard of Review*

Under Federal Rule of Civil Procedure 56(c), a moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994) ("[T]he burden is upon the moving party to

---

[3] When matters outside the pleadings are presented in connection with a motion to dismiss, "a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (internal quotation marks omitted). The Second Circuit permits conversion of a motion to dismiss into a motion for summary judgment provided the non-moving party has had "reasonable opportunity to meet facts outside the pleadings." *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985).

demonstrate that no genuine issue respecting any material fact exists." (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975))).

A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*) and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)). Therefore, although a court "should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 151 (2000).

However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Summary judgment is proper when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo*, 22 F.3d at 1223-24 (citations omitted).

B.   *False Arrest and Malicious Prosecution Claims*

As noted in my January 23, 2009 opinion, defendants' motion to dismiss the false arrest and malicious prosecution claims was procedurally deficient. Although defendants correctly argued that both claims could be defeated by a showing that the arrest and prosecution were supported by probable cause, *see Dukes v. City of New York*, 879 F. Supp. 335, 340-42

6

(S.D.N.Y. 1995), in arguing that probable cause was present, they relied solely on Mitchell's pleadings, which did not bear the weight. Now, on the converted motion, the grand jury testimony is properly before me, and it clearly establishes probable cause for the challenged arrest and prosecution.

    1.    *False Arrest*

The existence of probable cause "is a complete defense to an action for false arrest." *Bernard v. United States*, 25 F.3d 98, 100 (2d Cir. 1994). Probable cause is established "when the arresting officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *O'Neill v. Town of Babylon*, 986 F.2d 646, 650 (2d Cir. 1993) (quoting *Calamia v. City of New York*, 879 F.2d 1025, 1032 (2d Cir. 1989)); *see also Miloslavsky v. AES Eng'ring Soc'y*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) ("The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed."), *aff'd*, 993 F.2d 1534 (2d Cir. 1993), *cert. denied*, 510 U.S. 817 (1993). "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). Moreover, the validity of the arrest does not depend on a subsequent finding of guilt. *Pierson v. Ray*, 386 U.S. 547, 555 (1967).

Mitchell's argument that the police officers' actions were deficient because they relied only on a general description of perpetrator is without merit. His case is unlike those cases where a general, vague description of a perpetrator is provided to law enforcement, who then utilized that information to stop and detain an individual. *See, e.g., People v. Dubinsky*, 734

7

N.Y.S.2d 245, 246 (2d Dep't 2001) ("Vague and general descriptions are not sufficient to constitute reasonable suspicion."). Here, the officers had far more than reasonable suspicion to detain Mitchell; they had probable cause to arrest him because LD specifically identified Mitchell as her aggressor to her friends (who then detained Mitchell while they contacted law enforcement) and to the police officers when they arrived at the scene. Mitchell's protestations that he was innocent do not negate the existence of probable cause. Probable cause may be established in spite of "different stories from an alleged victim and the arrestee." *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001). Moreover, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). Because there was no reason here for the arresting officers to doubt LD's veracity, they were authorized to arrest Mitchell. Indeed, as I previously noted, "under the circumstances, it would have been irresponsible of them to let him go." *Mitchell I*, 2009 WL 160798, at *8. Because no genuine issue of material fact exists with respect to the existence of probable cause, defendants are entitled to summary judgment on this claim.

    2.    *Malicious Prosecution*

Under New York law a plaintiff bringing a malicious prosecution claim must allege "that a prosecution was initiated against him, that it was brought with malice [and] without probable cause to believe that it could succeed and that the prosecution terminated in favor of the accused plaintiff." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) (citing *Martinez v. City of Schenectady*, 97 N.Y.2d 78, 84 (2001); *Ricciuti*, 124 F.3d at 130). A grand jury's indictment creates a presumption of probable cause. *Colon v. City of New York*, 60 N.Y.2d 78

(1983); *Rothstein v. Carriere*, 373 F.3d 275, 282-83 (2d Cir. 2004). However, that presumption is "rebuttable, and may be overcome by evidence establishing that the police witnesses 'have not made a complete and full statement of facts … that they have misrepresented or falsified evidence … or otherwise acted in bad faith." *Boyd*, 336 F.3d at 76 (citing *Colon*, 60 N.Y.2d at 82-83). In order to prevail in a malicious prosecution action after having been indicted, a plaintiff "must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Colon*, 60 N.Y.2d at 83. "The burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially [.]'" *Rothstein*, 373 F.3d at 284 (citing *Colon*, 60 N.Y.2d at 82).

As with his false arrest claim, Mitchell's malicious prosecution claim fails because there is no genuine issue of material fact with respect to the existence of probable cause. Not only was there probable cause for the arrest based on LD's complaint to the police, as discussed above, but the grand jury's indictment created a presumption of probable cause which has not been rebutted here. Mitchell has failed to establish that any police conduct undertaken in bad faith produced his indictment. In addition, although the initial record before me suggested the possibility that Mitchell might have a malicious prosecution claim despite the existence of probable cause based on allegations that a belatedly disclosed police report was fabricated, *see Mitchell I*, 2009 WL 160798, at *9-10, I concluded that the grand jury and trial transcripts dispelled "the specter that this case embraced conduct analogous to the conduct at issue in *Jocks*[*v. Tavernier*, 316 F.3d 128 (2d Cir. 2003)] and *Ricciuti*." *Id*. As explained in my earlier opinion, the grand jury minutes clarified that LD identified Mitchell as her attacker from the

9

outset and that the belatedly disclosed report was in fact the "scratch copy" of the report that had been disclosed prior to trial. *Id*. Because no genuine issue of material fact exists with respect to the existence of probable cause, defendants' motion for summary judgment with respect to Mitchell's malicious prosecution claim is also granted.[4]

C.     *Mitchell's Newly Raised Fourth Amendment Claim*

Mitchell also raises a new claim in his supplemental opposition papers, alleging that defendants violated his Fourth Amendment rights by failing to investigate exculpatory evidence and/or properly corroborate the allegations made by LD. A claim cannot be raised for the first time in submissions in opposition to summary judgment. *Beckman v. United States Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000). Nor has Mitchell sought leave to amend his complaint to include this claim. Regardless, this claim is without merit. Mitchell has alleged no facts showing that his Fourth Amendment right to be free from unreasonable seizures was violated by "a sustained detention stemming directly from the law enforcement officials' refusal to investigate available exculpatory evidence." *Russo v. City of Bridgeport*, 479 F.3d 196, 208 (2d Cir. 2007). Here there are no allegations that the police deliberately ignored available exculpatory evidence and Mitchell's purported denials that he "didn't do anything wrong" did not exonerate him, nor did they constitute evidence the police was required to investigate. *See Baker v. McCollan*, 443 U.S. 137, 145-46 (1979) (arresting officer not required "to investigate independently every claim of innocence … [n]or is the official charged with maintaining custody of the accused … required by the Constitution to perform an error-free investigation of such a claim").

---

[4] Mitchell's assertion that he was offered a plea bargain, pursuant to which he would have been released in 2006, has no bearing on whether a question of material fact remains regarding is false arrest and malicious prosecution claims. Nor does the list submitted by Mitchell as Exhibit C to his supplemental opposition, entitled "Type of complaints filed against the officers of the 110th Precinct, 2001-2005," have any relevance to whether there was probable cause to arrest and prosecute him. Accordingly, I decline to address these arguments.

## CONCLUSION

For the reasons stated above, the defendants' converted motion for summary judgment is granted. The Clerk is respectfully directed to close the case.

So ordered.


John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
       August 12, 2009